# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 06-6026 WM

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Trent Dales Ginter, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | Appeal from the United States |
| Trent Dales Ginter, | * | Bankruptcy Court for the |
| | * | Western District of Missouri |
| | * | |
| Debtor-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Alliant Bank, Boonville, | * | |
| | * | |
| Creditor-Appellee. | * | |
| | * | |

Submitted: August 23, 2006
Filed: September 14, 2006

Before KRESSEL, Chief Judge, SCHERMER, and MCDONALD, Bankruptcy
Judges.

SCHERMER, Bankruptcy Judge.

Trent Dales Ginter ("Debtor") appeals an order of the bankruptcy court denying his motion to avoid the lien of Alliant Bank, Boonville ("Creditor") in certain tools of the Debtor's trade on the grounds of res judicata and judicial estoppel. We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons stated below, we reverse.

## ISSUE

The issue on appeal is whether the doctrines of res judicata and judicial estoppel prevent the Debtor from avoiding the Creditor's nonpossessory, nonpurchase-money security interest in certain tools of the Debtor's trade pursuant to 11 U.S.C. § 522(f)(1)(B)(ii) after the Debtor stipulated to relief from the automatic stay in the Creditor's favor with respect to the tools pursuant to 11 U.S.C. § 362(d). We conclude that neither res judicata nor judicial estoppel prevent the Debtor from avoiding the security interest in the tools after consenting to relief from the automatic stay in the Creditor's favor with respect to the tools.

## BACKGROUND

The Debtor works as a mechanic for the City of Columbia, Missouri. The Debtor owns tools which he uses in the course of his employment. The Debtor spent no more than $3,000 acquiring the tools over the years.

Prior to filing a Chapter 7 bankruptcy case, the Debtor and his girlfriend obtained a loan from the Creditor to start a tanning business. They used the proceeds of the loan to purchase four tanning beds for approximately $11,000. The loan was secured by an interest in the tanning beds. The Debtor pledged his tools as additional collateral on the loan.

2

On October 16, 2005, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor listed the tools as assets in his schedules with a value of $800 and asserted an exemption in the tools in the amount of $800 as tools of trade under Missouri Revised Statutes § 513.430(4).

After filing the bankruptcy petition, the Debtor stipulated to the Creditor's motion for relief from the automatic stay with respect to the tanning beds and the tools. The Debtor stipulated that he owed a debt to the Creditor; that the debt was secured by an interest in four tanning beds and assorted tools; that the debt to the Creditor was delinquent; that the Debtor and his girlfriend had no equity in the tanning beds and the personal property and equipment secured by the debt; that the property was of inconsequential value or benefit and was burdensome to the estate; and that cause existed to grant relief from the automatic stay. The Creditor filed the stipulated motion on December 13, 2005. The bankruptcy court granted the stipulated motion on December 14, 2005, by docket entry.

On December 15, 2005, the Debtor filed a motion to avoid the Creditor's lien in the tools pursuant to Section 522(f)(1) of the Bankruptcy Code. The Creditor objected to the motion on waiver and estoppel grounds. The Creditor amended its objection to dispute the Debtor's valuation of the tools and their status as tools of trade. A hearing on the motion was held. The Debtor testified at the hearing that he used the tools everyday in his work and that the tools had a garage sale value between $300 and $600. The court denied the motion to avoid lien on the alternate bases of judicial estoppel and res judicata. The Debtor appealed the order denying his motion to avoid the lien on the tools.

**STANDARD OF REVIEW**

The parties have not raised any issues with the facts as decided by the trial court in this appeal. Therefore, we need not review the facts for the purposes of

3

this decision. We review the application of the legal principle of res judicata de novo. *Ladd v. Ries (In re Ladd)*, 450 F.3d 751, 753 (8th Cir. 2006); *Lundquist v. Rice Mem'l Hosp.*, 238 F.3d 975, 976-77 (8th Cir. 2001). We review the application of judicial estoppel for an abuse of discretion. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1046-47 (8th Cir. 2006); *Strong v. America's Center Food Service Partners/Levy Rest. Ltd. P'ship*, No. 05-2679, 2006 WL 1975996 (8th Cir. July 14, 2006).

## DISCUSSION

### Res Judicata

The doctrine of res judicata prohibits the relitigation by the same parties of the same cause of action. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 327, 326, n.5 (1979). The doctrine of res judicata bars a later suit where (1) an earlier suit resulted in a final judgment on the merits; (2) the earlier suit was based on proper jurisdiction; (3) both suits involve the same cause of action; and (4) both suits involve the same parties or their privies. *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir. 1983). Res judicata does not prevent the lien avoidance motion after the termination of the automatic stay because the two motions do not involve the same cause of action.

The two motions involved in this appeal were each based on a separate section of the Bankruptcy Code. The motion for relief from the automatic stay was based on Section 362(d) of the Bankruptcy Code which provides that the automatic stay may be modified for cause including the lack of adequate protection of an interest in property. 11 U.S.C. § 362(d)(1). To the extent the automatic stay applies to property of the estate, it may be modified if the debtor does not have any equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). In order to obtain relief from the automatic

4

stay to proceed against collateral which is property of the bankruptcy estate, a creditor must establish a debt, an interest in property of the estate, and either a lack of adequate protection of the creditor's interest in the property of the estate or a lack of equity in the property and the fact that the property is not necessary for an effective reorganization. In the stipulated motion, the Debtor agreed that he owed the Creditor a debt; that the debt was secured by an interest in four tanning beds and assorted tools; that the debt was delinquent; and that the Debtor had no equity in the tanning beds and tools. He also agreed that the tools and tanning beds were of inconsequential value or benefit and burdensome to the estate. This latter stipulation was not necessary for the modification of the automatic stay, but satisfied the trustee of the Debtor's bankruptcy estate that the tanning beds and tools could not be sold for the benefit of the bankruptcy estate.

The motion to avoid the lien was based on Section 522(f) of the Bankruptcy Code which permits a debtor to avoid the fixing of a lien on an interest of the debtor in property to the extent such lien impairs an exemption to which the debtor would have been entitled if such lien is a nonpossessory, nonpurchase money security interest in tools of the debtor's trade. 11 U.S.C. § 522(f)(1)(B)(ii). In order to avoid the Creditor's lien in the tools, the Debtor had to establish that the Creditor has a security interest in the tools; that the Creditor's interest is a nonpossessory, nonpurchase money security interest; that the Debtor is entitled to an exemption in the tools; that the Creditor's lien impairs his exemption in the tools; and that the tools are tools of his trade.

Actions under Section 362(d) and under Section 522(f) of the Bankruptcy Code are based on some of the same underlying facts: a creditor-debtor relationship and a security interest in certain collateral. In the instant case, both motions require a debt from the Debtor to the Creditor secured by an interest in the tools. Other facts may tend to support different elements required under Section 362(d) and Section 522(f) of the Bankruptcy Code. For instance, the Debtor owes

5

more to the Creditor than the combined value of the tanning beds and the tools. This fact supports a finding of lack of equity in the automatic stay context. This fact also supports a finding that the Creditor's lien on the tools impairs the Debtor's exemption of the tools as tools of his trade in the lien avoidance context. The two actions share some of the same underlying facts. They are not, however, based on the same cause of action. They are based on distinct sections of the Bankruptcy Code designed to serve different purposes.

Res judicata prevents not only the relitigation of issues which were actually litigated but also issues which could have been litigated in the first action. *Lovell v. Mixon*, 719 F.2d at 1376. Lien avoidance actions are separate from stay relief matters. Lien avoidance rights are not affirmative defenses to a motion for relief from the automatic stay. Furthermore, a pending lien avoidance motion would not necessarily defeat a motion for relief from the automatic stay. Therefore, the stipulation to relief from the automatic stay does not prevent the later lien avoidance motion.

Res judicata is normally an affirmative defense which is lost if not timely raised. *Arizona v. California*, 530 U.S. 390, 410 (2000). Fed. R. Civ. P. 8(c), applicable in the bankruptcy context pursuant to Fed. R. Bankr. P. 7008(a). A court may raise the issue of res judicata sua sponte if it is on notice that it has previously decided the underlying substantive issue in dispute. *Arizona v. California*, 530 U.S. at 412. This result is consistent with one of the policies underlying res judicata: the avoidance of unnecessary judicial waste. *Id*. However, where no judicial resources have been spent on the resolution of a question, a court must be cautious about raising a preclusion bar sua sponte. *Id.* at 412-13. As previously stated, the issues in the stay motion and the lien avoidance motion are not the same and, therefore, res judicata does not apply.

## Judicial Estoppel

Judicial estoppel prevents a party from prevailing in one phase of litigation on an argument and then relying on a contradictory argument to prevail in another phase of the litigation. *New Hampshire v. Maine*, 532 U.S. 767, 749 (2001)(citations omitted). Where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, that party may not thereafter assume a contrary position simply because of changed interests, especially if the change in position would prejudice a party who acquiesced to the original position. *Id.* The doctrine of judicial estoppel is uniformly recognized as having the purpose of protecting the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *Id.* at 749-50. Courts may invoke the doctrine of judicial estoppel at their discretion because it is intended to prevent improper use of the judicial machinery. *Id.* at 750.

No inflexible prerequisites or exhaustive formula exists for determining the applicability of judicial estoppel. *Id.* at 751. Nonetheless, several factors typically inform the decision to apply the doctrine in a particular case. *Id.* at 750. First, a party's later position must be clearly inconsistent with its earlier position. *Id.* Second, success in persuading the court to accept the party's earlier position is important. In such a situation, judicial acceptance of an inconsistent position in a later proceeding would create the perception that one of the courts was mislead. *Id.* Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations or perceptions of fraud on or misleading of the court. *Id.* at 750-51. A third consideration is whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.*

In the present case, the Debtor has not taken inconsistent positions. Accordingly, the doctrine of judicial estoppel is not implicated. In the motion for

relief from the automatic stay, the Debtor stipulated that he owed the Creditor a debt; that the debt was secured by an interest in the tools and the tanning beds; that he did not have any equity in the tools and the tanning beds; and that the Creditor was entitled to relief from the automatic stay to pursue its security interest in the tanning beds and the tools. In the lien avoidance motion, the Debtor again asserted that he owed the Creditor a debt and that the debt was secured by an interest in the tools. These facts are necessary for relief in the automatic stay context under Section 362 of the Bankruptcy Code as well as in the lien avoidance context under Section 522 of the Bankruptcy Code. The Debtor also asserted that he was entitled to avoid the otherwise valid lien under Section 522(f) of the Bankruptcy Code. A lien avoidance under Section 522(f) does not change the fact that the Creditor had a valid lien on an earlier date and was entitled to relief from the automatic stay under Section 362 at such time. Judicial estoppel is simply not appropriate in this situation because the Debtor has not taken clearly inconsistent positions.

Second, by consenting to the motion for relief from stay, the Debtor did not succeed in convincing the Court of a position contrary to any taken in the lien avoidance motion. To the contrary, the Debtor merely stipulated that grounds existed for relief from the automatic stay under Section 362(d) of the Bankruptcy Code. In doing so, the Debtor acquiesced to the Creditor's representations necessary for it to convince the court to grant it relief from the automatic stay. The Debtor did not mislead the court nor is he asking the court to take inconsistent positions.

Finally, the Debtor neither gained an unfair advantage nor imposed an unfair detriment on the Creditor by consenting to the stay relief motion. Rather, the Debtor conferred several benefits on the Creditor by consenting to the stay relief motion. A filing fee is not required for a stipulated stay relief motion. Therefore, by consenting to the motion, the Debtor saved the Creditor the filing fee and the costs associated with attending a hearing and litigating a contested matter.

8

Furthermore, the stay relief motion related to the tanning beds and the tools, with substantial value existing in the tanning beds. Accordingly, the Creditor would likely have filed the stay relief motion without the Debtor's consent with respect to the tools. Regardless, no evidence of any prejudice to the Creditor was presented at the hearing on the lien avoidance motion. The Debtor did not force the Creditor to incur any additional costs, prejudice the Creditor, nor gain an unfair advantage by consenting to the stay relief motion. Judicial estoppel is not appropriate in this situation. The court abused its discretion in applying judicial estoppel to deny the lien avoidance motion.

## CONCLUSION

The Debtor's right to avoid the lien in the tools under Section 522(f) of the Bankruptcy Code did not involve the same cause of action as the earlier relief from stay proceeding under Section 362(d) of the Bankruptcy Code. Furthermore, the Debtor did not take inconsistent positions by consenting to the Creditor's relief from stay motion and then filing the lien avoidance motion. Therefore, the court should not have denied the lien avoidance motion under the doctrine of res judicata or judicial estoppel. The order denying the lien avoidance motion is therefore REVERSED. The bankruptcy court never addressed the merits of the lien avoidance motion. We therefore REMAND for such a determination.

We do not encourage the Debtor's tactics in stipulating to relief from the automatic stay and then turning around and filing a lien avoidance motion. Better practice would have been to at least advise the Creditor of the Debtor's intentions to avoid the lien if not filing the lien avoidance motion prior to signing the stipulation. In waiting until after relief from stay was granted, the Debtor risked the repossession of the tools by the Creditor which would have transformed the Creditor's security interest from an avoidable nonpossessory interest into a non-avoidable possessory interest. However, the Debtor did not take inconsistent legal

9

positions, he did not waste judicial time, and he did not prejudice the Creditor. To the contrary, by stipulating to relief from the automatic stay, the Debtor enabled the Creditor to avoid the payment of a filing fee for the motion and the expense of a hearing. Furthermore, the relief from stay related to the tanning beds as well as the tools, and the tanning beds had significantly greater value than the tools. Therefore, the Creditor would have undoubtedly sought relief from the stay with respect to the tanning beds even if the Debtor had filed a motion to avoid the lien on the tools on the day he filed his bankruptcy petition. By stipulating to relief from the automatic stay the Debtor also eliminated the need for a hearing on the stay motion, minimizing the use of judicial resources in the stay relief context. Nonetheless, we encourage debtors to determine their intentions with respect to collateral at the outset of a bankruptcy case and, if they wish to avoid liens, to promptly file the necessary pleadings to accomplish their intentions.

———————————